UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY FISHELL and JUSTIN FISHELL, | No. 2:23-cv-00027-DJC-DB |
| Plaintiffs, | |
| v. | **ORDER** |
| NATIONWIDE MUTUAL INS. CO. and AMCO INS. CO., | |
| Defendants. | |

Plaintiffs Amy and Justin Fishell ("Plaintiffs") were unfortunate victims of the Paradise, California Camp Fire in 2018. Plaintiffs had to relocate after their home was destroyed by the fire and incurred additional expenses resulting from additional travel. Plaintiffs were insured by AMCO Insurance Company ("AMCO"), a subsidiary of Nationwide Mutual Insurance Company ("Nationwide") (collectively "Defendants"). While Plaintiffs do not deny that they were reimbursed by Defendants for this additional travel, Plaintiffs claim they were reimbursed improperly under the Internal Revenue Service ("IRS") standard mileage rate for medical and moving expenses, and should have instead been reimbursed under the IRS standard rate for business use. Plaintiffs allege that the failure to use the business rate, which covers "fixed costs" in addition to mileage, is a breach of contract and violation of various California laws and

////

1

seek to bring claims on their behalf and on behalf of a not yet certified class of similarly situated individuals.

Defendants move the Court to dismiss Plaintiffs' First Amended Complaint ("FAC"), arguing that Nationwide is not a proper defendant, that the claims are time barred, and that Plaintiffs have failed to allege plausible claims.  Because Plaintiffs have failed to establish that their claims were tolled, the claims must be dismissed as time-barred.  In addition, Plaintiffs fail to state a claim upon which relief can be granted, as discussed below.  The Court will GRANT Plaintiffs leave to amend their Complaint.

## BACKGROUND

On November 8, 2018, Plaintiffs' home was destroyed in the Paradise, California Camp Fire.  (FAC (ECF No. 14) ¶¶ 29, 32.)  As a result, Plaintiffs were forced to relocate.  (FAC ¶ 29.)  Due to their relocation, Plaintiffs incurred additional travel expenses.  (FAC ¶ 36.)

Plaintiffs were insured under a homeowners insurance policy issued by AMCO, a subsidiary of Nationwide.  (FAC ¶¶ 5–7.)  Plaintiffs allege that while their policy was with AMCO, Nationwide acted as the alter-ego of AMCO and oversaw the processing of Plaintiffs' claims, as evidenced by the use of Nationwide letterhead on official documents, intermingling of Nationwide and AMCO agents, signatures by Nationwide-only officers on the policy, and the reimbursement payments made by Nationwide. (FAC ¶¶ 7, 13; Opp'n (ECF No. 23) at 29–30.)

As part of the insurance policy, AMCO was obligated to reimburse Plaintiffs to "cover any necessary increase in living expenses incurred" including the additional travel expenses associated with their displacement following the destruction of their home.  (FAC ¶¶ 10–11, 21–22.)  Defendants made payments to Plaintiffs for these expenses from sometime in 2018 up to September 2, 2022.  (FAC ¶ 36.)  Plaintiffs allege that Defendants improperly used the IRS Standard mileage rate for moving and medical use to calculate their reimbursements, and failed to inform Plaintiffs of the

rate at which they calculated the reimbursements. (FAC ¶¶ 12, 23–28.) According to Plaintiffs, it is "industry standard" to instead use the IRS rate for business use, which is approximately three times higher. (FAC ¶¶ 24, 26.)

Plaintiffs claim that the use of the moving and medical rate, and Defendants' failure to disclose the rate they used to reimburse Plaintiffs, constitutes a breach of contract, breach of special duty to insured, breach of the covenant of good faith and fair dealing, and violation of the California Unfair Competition Act. Plaintiffs additionally request a declaration that Defendants' practice is unfair or unlawful. (FAC at 12–18.)

Defendants filed a Motion to Dismiss on March 7, 2023. (Mot. (ECF No. 19).) Defendants argue that Plaintiffs lack standing to bring this action, and that the suit is barred under the statute of limitations. Defendants further argue that each cause of action fails to state a claim upon which relief can be granted. Plaintiffs opposed the motion (Opp'n), and Defendants have filed a reply (Reply (ECF No. 24)).

I. **Legal Standard for Motion to Dismiss**

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The Court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party." *Steinle v. City and Cnty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)). If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But

3

this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id*. (citing *Twombly*, 550 U.S. at 555). This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense." *Id*. at 679.

## ANALYSIS

**II. Discussion**

    **A.  Standing to Bring Claims Against Nationwide**

Nationwide requests that it be dismissed from this lawsuit because Plaintiffs lack standing to bring suit against it. Under Article III, claims may only be brought against defendants if they likely caused an alleged injury, and the injury is redressable by the court. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Otherwise, there is no case or controversy that a federal court can resolve, and the suit must be dismissed. *Id*. Nationwide argues that because it was not a party to the contract between Plaintiffs and AMCO, and because the injury is not traceable to Nationwide's conduct, and therefore not redressable by Nationwide, there is no Article III standing to bring suit against it.

In evaluating the Rule 12(b)(1) motion to dismiss, this Court may consider the evidence submitted by both parties. As the Ninth Circuit has stated:

> This is proper because Rule 12(b)(1) attacks on jurisdiction can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.1989).

*Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003). Defendants have submitted factual evidence to support the standing challenge, and Plaintiffs have submitted factual evidence in response. The

4

Court has converted this motion to a factual motion and the Court may look beyond the operative Complaint.

A parent of a subsidiary company cannot ordinarily be held liable just because of the parent-subsidiary relationship. *See, e.g.*, *United States v. Bestfoods*, 524 U.S. 51, 61–62 (1998). However, liability may be imputed "'where the subsidiary is the parent's alter ego, or where the subsidiary acts as the general agent of the parent," or where it "participates in the wrongdoing." *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 945 (S.D. Cal. 2007) (quoting *Harris Rutsky and Co. Ins. Servs., Inc. v. Bell and Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir.2003) and citing *Bestfoods*, 524 U.S. at 64–65). The elements of alter ego liability are "(1) that the parent exercised so much control over the subsidiary so as to have effectively assumed the subsidiary's day-to-day operations in carrying out the policy, and (2) that an inequitable result would obtain in the absence of the Court applying this standard." *Kundanmal v. Safeco*, No. 2:17-CV-06339-SVW, 2017 WL 6942758, at *2 (C.D. Cal. Dec. 13, 2017); *see also Ruiz v. Gen. Ins. Co. of Am.*, No. 1:20-CV-00218-AWI-EPG, 2020 WL 4018274, at *4 (E.D. Cal. July 15, 2020) (stating the first element in slightly different terms: "the parent must control 'the subsidiary to such a degree as to render the latter the mere instrumentality of the former'" (quoting *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995))).

While Plaintiffs do not specifically allege an alter ego theory of liability, construing the Complaint in Plaintiff's favor, the Court assumes one based on the Plaintiffs' allegations that Nationwide and AMCO intermingled their agents and official documents. Plaintiffs incorporate documents showing that Nationwide and AMCO utilize the same adjusters and agents, use the same "Nationwide" letterhead, and that the contract between Plaintiffs and AMCO is signed by parties that are officers only of Nationwide and not of AMCO. (*See* FAC ¶ 36.) In addition, in Plaintiffs' Opposition they include copies of the reimbursement checks issued to them by Nationwide alone. (Opp'n. at 29–30.) Defendants similarly include multiple letters regarding the

Plaintiffs' insurance claims which were issued on solely Nationwide letterhead by a Nationwide representative. (*See* Mot. at 35–40.) This evidence, particularly the checks issued by Nationwide for Plaintiffs' claims under the AMCO policy, is sufficient at this stage to plausibly allege that Nationwide exercised control over AMCO such that it has assumed AMCO's day-to-day operations, at least with regard to Plaintiffs' policy and claims. Similarly, because Plaintiffs allege that Nationwide was integral to AMCO's operations and therefore the decisions about reimbursement, it would be inequitable to not hold Nationwide to account for its purported role in the alleged conduct. Therefore, in light of the current factual record, Plaintiffs have standing to bring claims against Nationwide.

### B. Timeliness of Claims

Defendants next argue that Plaintiffs have exceeded the time limit to bring suit under the contract, which is one year from the date of loss, and that the claims are therefore time-barred. Ordinarily, a contractual limitation on the time to bring suit would be controlling. *See Gaylord v. Nationwide Mut. Ins. Co.*, 776 F. Supp. 2d 1101, 1113 (E.D. Cal. 2011) ("[A] covenant shortening the period of limitations is a valid provision of an insurance contract."). However, Plaintiff alleges there are two other factors at play which modify the relevant limitations period. California Insurance Code section 2071 provides a two-year period to bring claims for losses resulting from a declared disaster, and California recognizes equitable tolling "from the time an insured gives notice of the damage to his insurer . . . until coverage is denied." *Prudential-LMI Com. Ins. v. Superior Court*, 51 Cal. 3d 674, 693 (1990), *as modified* (Dec. 13, 1990). Where tolling applies, the statute of limitations still begins to run on the date of loss, but is tolled for the interim period. *Id.*

Plaintiffs have sufficiently established that the Camp Fire was declared a federal and state disaster, but nonetheless cannot establish that section 2071 applies to their claims. Section 2071 was amended effective September 21, 2018 to include the twenty-four-months limitation period in the event of a declared emergency. *See* 2018

Cal. Legis. Serv. Ch. 639 (A.B. 2594).  Under section 2071(d)(1), the amendment only applies to "policies originated or renewed on or after the effective date" of September 21, 2018.  Plaintiffs' insurance policy appears to have been last renewed before this effective date, on April 8, 2018.  (FAC at 35.)  As such the extended time to file suit is inapplicable, and counsel for Plaintiffs conceded such at argument.

With respect to equitable tolling, Plaintiffs' counsel appeared to suggest at oral argument that tolling based on *Prudential* is inapplicable to this case because it does not involve a denial of benefits, but rather a failure to satisfactorily pay benefits after establishing that Plaintiffs were entitled to coverage under their policy.  Even if *Prudential* did apply, Plaintiffs do not allege sufficient facts to establish that the limitations period should have been tolled, or for how long.  While Plaintiffs recount the date of loss, November 8, 2018, Plaintiffs do not allege when they gave their insurer "notice of the damage," nor whether or when coverage was denied.  Plaintiffs allege that they have not been given notice that their file had been closed and that they received correspondence concerning their claims as late as November 21, 2022, but neither of these facts provides information about whether the coverage had been denied at any point.  Without facts indicating when tolling began, and whether and when tolling may have ended, the Court cannot determine the period during which the claim may have been tolled.  As a result, Plaintiffs have failed to establish a basis for equitable tolling.  *See Vashistha v. Allstate Ins. Co.*, 989 F. Supp. 1029, 1032 (C.D. Cal. 1997) (denying Plaintiff's tolling argument where they did not provide insurer with written notice of the loss).

Without establishing that the claims should have been tolled and for what period, the one-year contractual limitation would apply and would have run on November 8, 2019.  This suit was filed on January 6, 2023, well past this date.

At oral argument, Plaintiffs' counsel attempted to assert for the first time a theory of timeliness based on a continuing breach of the contract.  Because the contract necessitates that actions must be brought within one year of the "loss," such a

7

theory is only viable if the loss of use of the home was a separate "loss" under the policy, which was continuous from November 8, 2018 until the date Plaintiffs were able to use their home again. However, Plaintiffs have failed to plead sufficient facts to support this theory, including that the loss of use was a loss under the contract, and when the loss occurred.[1]

However, Plaintiffs may be able to amend their Complaint and provide the necessary information to establish tolling or to sufficiently allege a timely claim. As such Plaintiffs will be given leave to amend their Complaint.

The Motion to Dismiss is GRANTED as to all claims.

### C. Sufficiency of Claims

Although the Motion to Dismiss must be granted based on the failure to prove that equitable tolling applies, the Court will proceed with determining whether the claims have been sufficiently pled in the event Plaintiffs can overcome timeliness issue through an amended complaint. *See Lima v. Am. Home Mortg. Servicing, Inc.*, No. C 09-3561-CW, 2010 WL 144810, at *3–5 (N.D. Cal. Jan. 11, 2010) (analyzing the sufficiency of the plaintiff's claims despite failure to plead facts supporting equitable tolling).

#### i. Breach of Contract

To establish a prima facie breach of contract claim, Plaintiffs must sufficiently plead the following elements: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008), *as modified on denial of reh'g* (Feb. 5, 2008).

Here, Plaintiffs have failed to sufficiently allege a breach of contract. While they have sufficiently alleged the first two elements (that there was a contract between

---

[1] The Court notes that claims based on bad-faith conduct that occurs after initial policy coverage may not be claims "on the policy" and as such are not subject to the contractual limitation period. *See Velasquez v. Truck Ins. Exch.*, 1 Cal. App. 4th 712, 720–21 (1991) (discussing the development of case law on this issue).

8

them and the Defendants, and that they complied with the terms of the contract), they have failed to sufficiently allege a breach or damages.

In this case, the breach and damages elements are intermingled. While Plaintiffs argue that Defendants' failure to reimburse them at the business rate (which would have included additional reimbursement for "fixed costs") breaches Defendant's duty under the contract to fully compensate them for their additional living expenses, the contract does not state the rate by which Defendants must compensate their insured. Rather, the contract only states that they will "cover any necessary increase in living expenses incurred . . . so that [the] household can maintain its normal standard of living." (FAC at 42.) Plaintiffs do not sufficiently allege whether the reimbursements which they did receive failed to cover any necessary increase in expenses. Rather, Plaintiffs state, in conclusory fashion, that "the reimbursement rate paid by DEFENDANTS . . . does not fully compensate DEFENDANTS' insureds for the increased costs incurred as provided by the policy." (FAC ¶ 12; *see also* FAC ¶ 27.) Without more detail explaining *how* the rate used by Defendant is insufficient, the Complaint fails to provide more than a formulaic recitation of the elements of a breach of contract. *See Twombly*, 550 U.S. at 555.

At oral argument, counsel for Plaintiffs clarified that the additional fixed costs covered under the business rate included costs like vehicle insurance and registration. However, these costs were not incurred as a result of the loss and subsequent displacement. Because Plaintiffs would have paid for these fixed costs regardless of their displacement, the fixed costs do not represent an *increase* in living expenses, and therefore are not reimbursable under the contract. *See First v. Allstate Ins. Co.*, 222 F. Supp. 2d 1165, 1171 (C.D. Cal. 2002) (Plaintiffs' assertion that they were necessarily underpaid because the damage report was inaccurate failed to allege a breach of contract claim where they failed to establish that the amount they received was not sufficient to cover the cost of repairs), *aff'd sub nom. Ennis v. Allstate Ins. Co.*, 99 F. App'x 146 (9th Cir. 2004). Since Plaintiffs have not shown that they were not in

fact compensated for their additional expenses, they have neither shown a breach of the contract nor any damages.

The Motion to Dismiss is therefore GRANTED as to the Second Claim for Relief. Plaintiffs will be granted leave to amend to provide more detailed allegations regarding whether there are any additional fixed costs they otherwise would not have incurred, or how the rate violates Defendant's contractual obligation to "cover any necessary increase in living expenses incurred" by Plaintiffs.

### ii. Breach of Special Duty to Insured

California does not recognize an independent cause of action under the theory of a general special duty owed to insured beyond the duty of reasonable care implied in the duty of good faith and fair dealing (which Plaintiffs separately allege). *See Jones v. Grewe*, 189 Cal. App. 3d 950, 955–56 (1987) (holding that the "insurer's duty to inform the insured of his rights and obligations under the policy . . . is included in the implied duty of good faith and fair dealing which an insurer owes its insured[]"). In general, there is no other special duty which insurance companies owe to their insured. Instead, an insurer (through its agent) may assume a greater duty to the insured by its actions and be held to a higher standard of care as a result. *See Paper Savers, Inc. v. Nacsa*, 51 Cal. App. 4th 1090, 1096–97 (1996) (collecting cases). For example, in *Eddy v. Sharp*, an insurance broker assumed a special duty to the insured by deliberately undertaking the task of finding a policy which would directly address the insured's needs. 199 Cal. App. 3d 858, 866 (1988). As the Complaint is currently styled, Plaintiffs make no such allegation that Defendants or their agents undertook such a greater duty.

In their Opposition, Plaintiffs cite *Egan v. Mutual of Omaha* which found there was a "special relationship" between an insurance company and their insureds, but this case does not support Plaintiffs' theory. 24 Cal. 3d 809, 820 (1979). *Egan* found that the special relationship justified the imposition of exemplary damages under California Civil Code section 3294, not that it created a stand-alone basis for liability.

*Id.* ("The special relationship between the insurer and the insured illustrates the public policy considerations that may support exemplary damages in cases such as this."); *see also Neal v. Farmers Ins. Exch.*, 21 Cal. 3d 910, 922 (1978) (assessing whether punitive damages would apply under section 3294 in addition to compensatory damages for the breach of good faith and fair dealing).

Plaintiffs seemingly conflate section 3294 and their breach of special duty claim, requesting damages under section 3294 in the third cause of action. (*See* FAC ¶ 68). Section 3294 provides that exemplary damages may be awarded in addition to actual damages "[i]n an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). If Plaintiffs are attempting to bring a claim for punitive damages under section 3294, they must plead the elements required for such damages as part of an action for breach of an obligation not arising out of contract, such as the alleged breach of the covenant of good faith and fair dealing.

For the above reasons, the Motion to Dismiss as to Plaintiffs' Third Claim for Relief is GRANTED. Plaintiff will be granted leave to amend to show specific facts that give rise to a special relationship, as well as to add a claim for damages under section 3294 if Plaintiffs believes they can establish the requisite elements.

### iii. Breach of Covenant of Good Faith and Fair Dealing

In California, the Covenant of Good Faith and Fair Dealing is implied in every contract and "aims to effectuate the contract's purposes and promises, and to protect the parties' legitimate expectations based upon the terms of the contract" by requiring that the contracting parties refrain from doing anything to injure the rights of the other to receive the benefits of the contract. *Kelly v. Skytel Commc'ns, Inc.*, 32 F. App'x 283, 285 (9th Cir. 2002). The precise nature and extent of the duty imposed by such an implied promise depends on the contractual purposes. *Egan*, 24 Cal. 3d at 818. In the context of an insurance contract, an insurer must give the insured's

interests as much consideration as it does its own, which includes the duty to "inform the insured of his rights and obligations under the policy, particularly when an insured's apparent lack of knowledge may result in a loss of benefits or a forfeiture of rights." *See Jones v. Grewe*, 189 Cal. App. 3d 950, 955 (1987); *see also Davis v. Blue Cross of N. California*, 25 Cal. 3d 418, 428 (1979).  In their Complaint, Plaintiffs allege that Defendants breached their duty to consider Plaintiffs' interests by failing to inform Plaintiffs about the mileage reimbursement rate and of their right to contest the reimbursements.

Defendants argue that the covenant of good faith does not apply to disclosure of the reimbursement rate because there is no rate outlined in the contract, and therefore no term for the implied duty to effectuate.  However, the contract does provide for the reimbursement of necessary expenses, and the implied covenant of good faith may be imposed to effectuate that purpose of the contract.  While there is no rate outlined in the contract, Defendants must still act in good faith when reimbursing Plaintiffs, and part of that duty is informing Plaintiffs about how they are being reimbursed where the Plaintiffs' "lack of knowledge may [have] result[ed] in a loss of benefits or a forfeiture of rights."  The fact that no reimbursement rate was outlined in the policy would have made it all the more important for Defendants to act fairly and disclose how they were calculating reimbursements.

Even so, Plaintiffs' claim fails for reasons similar to the breach of contract claim: Plaintiffs have failed to allege that Defendants acted in bad faith when reimbursing Plaintiffs, or that they have suffered any harm.  If the medical/moving rate compensated Plaintiffs for their increase in living expenses and the fixed expenses were never at issue, Defendants did not act in bad faith by failing to disclose the rate at which they calculated the reimbursement.  Plaintiffs' lack of knowledge in this regard would not have "resulted in a loss of benefits."

////

Plaintiffs have failed to allege that Defendants breached their implied duty of good faith and fair dealing. The Motion to Dismiss is GRANTED as to Plaintiffs' Fourth Claim for Relief.

### iv. UCL Claims

The California Unfair Competition Act prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. and Pro. Code § 17200, *et seq*. As to business acts or practices, claims may be brought under any of the three "prongs" by alleging that the conduct is unlawful, unfair, or fraudulent.

Plaintiffs do not explicitly state which of Defendants' business practices are unfair, and thus have failed to provide sufficient detail under Federal Rule of Civil Procedure 8(a)(2). In their Opposition, Plaintiffs tie the allegations that "Defendants' deviation from industry practice by applying the IRS standard mileage rate for medical and moving use" in paragraphs 23 three through 28 of the Complaint with the allegation in paragraph 51 that "DEFENDANTS' business practices are unfair under the UCL because DEFENDANTS have acted in a manner that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to Plaintiffs and the Class Members." (See Opp'n. at 19.) If that is what they intend, however, Plaintiffs must say so in their complaint. That is particularly true given that in the request for declaratory relief, the Plaintiffs state the failure to provide Plaintiffs with adequate notice of the use of the limited reimbursement rate or the failure to notify Plaintiffs of their right to contest the use of the limited reimbursement rate is "an unfair and/or unlawful business practice." (FAC ¶ 82.) Plaintiffs have not given "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

Claims brought under the unlawful prong must be premised on some separate predicate unlawful offense. Only claims which were sufficiently pled may serve as a predicate claim. *Rivera v. BAC Home Loans Servicing, L.P.*, 756 F. Supp. 2d 1193, 1200–01 (N.D. Cal. 2010). Plaintiffs have failed to sufficiently plead any unlawful act on

13

the part of Defendants to serve as a predicate to this UCL claim. "A breach of contract, and by extension, a breach of the implied covenant of good faith and fair dealing, is not itself an unlawful act for purposes of the UCL" because "[c]ontractual duties are voluntarily undertaken by the parties to the contract, not imposed by state or federal law." *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1110 (E.D. Cal. 2010) (quoting *Smith v. Wells Fargo Bank, N.A.*, 135 Cal. App. 4th 1463, 1484 (2005)). Plaintiffs' passing reference to an alleged violation of California Insurance Code section 1861.03(a) does not remedy this shortcoming, particularly since section 1861.03(a) also requires a showing that another law was violated.

Accordingly, Defendants' Motion to Dismiss Plaintiffs' First Claim for Relief is GRANTED with leave to amend.

### v.   Declaratory Relief

Under 28 U.S.C. § 2201, a federal court may "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). "A request for declaratory relief may be considered independently of whether other forms of relief are appropriate." *Powell v. McCormack*, 395 U.S. 486, 518 (1969). However, where a claim of declaratory relief seeks the same relief as another of the plaintiff's causes of action, the claim for declaratory relief should be dismissed. *See Swartz v. KPMG LLP*, 476 F.3d 756, 765-66 (9th Cir. 2007) ("To the extent [the plaintiff] seeks a declaration of defendants' liability for damages sought for his other causes of action, the claim is merely duplicative" and should be dismissed.).

Defendants argue that the declaratory relief claim is duplicative of the breach of contract claim and so should be dismissed in accordance with the common practice of courts in the Ninth Circuit and this district. (*See* Mot. at 17 (citing *Lockhart v. Travelers Com. Ins. Co.*, No. 1:21-cv-00268-DAD-SKO, 2022 WL 541789, at *5 (E.D. Cal. Feb. 23, 2022); *Hale Bros. Inv. Co., LLC v. StudentsFirst Inst.*, No. 2:16-cv-02284-JAM-EFB, 2017 WL 590255, at *10 (E.D. Cal. Feb. 14, 2017); *Diversified Cap. Invs., Inc. v. Sprint*

*Commc'ns, Inc.*, No. 15-cv-03796-HSG, 2016 WL 2988864, at *9 (N.D. Cal. May 24, 2016)).)

    The Court declines to independently rule on the request for declaratory relief at this time.  The propriety of declaratory relief depends in part on whether it is duplicative of any other causes of action.  The Court has now dismissed several causes of action with leave to amend.  As a result, it is unclear whether the request for declaratory relief will overlap with any viable claims.  Should the Plaintiffs file an amended complaint that establishes timely claims, Defendant may bring a new motion to dismiss the claim for declaratory relief, which the Court will analyze with the benefit of the other amended claims, if any.

## CONCLUSION

    For the above reasons, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss is GRANTED with leave to amend.

    IT IS SO ORDERED.

Dated:   **July 18, 2023**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC2 – 23cv00027.mtd